# CASE NO. 25-10140-H

## UNITED STATES DISTRICT COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

## YATCO, LLC,
*Appellant - Defendant*

vs.

## YA MON EXPEDITIONS, LLC,
a limited liability corporation, on behalf
of itself and all others similarly situated,
*Appellee-Plaintiff*

---

On Appeal from the United States District Court for the Southern District
of Florida, The Honorable K. Michael Moore, Case No. 1:24-cv-20805-KMM

YA MON EXPEDITIONS, LLC, a limited liability corporation, on behalf of
itself and all others similarly situated,  Plaintiff,  v.  INTERNATIONAL
YACHT BROKER'S ASSOCIATION, INC., et al., Defendants.

---

## APPELLANT'S INITIAL BRIEF

---

**TAFT STETTINIUS & HOLLISTER LLP**
525 Okeechobee Blvd., Suite 900
West Palm Beach, FL 33401
ALAN B. ROSE, ESQ.
ROY E. FITZGERALD, ESQ.
GREGORY S. WEISS, ESQ.
TRACY SEGAL FOUST, ESQ.
Phone: (561) 655-2250/Fax: (561) 655-5537

*Counsel for Defendant-Appellant, YATCO , LLC*

## CERTIFICATE OF INTERESTED PERSONS

Appellant, YATCO, LLC, pursuant to 11th Cir. R. 26.1-1(a), certifies the following individuals and entities are known to have an interest in the outcome of this case:

Abeles, Scott – Counsel for Yacht Brokers Association of America, Inc.

Albert, Lee – Counsel for Appellee Tricia Defosey

Allied Marine, Inc. – Appellee (is a non-governmental party and is wholly owned by Ferretti S.p.A., a publicly held corporation).

Badala, Salvatore C. – Counsel for Appellee Ya Mon Expeditions, LLC

Basanta, Mark – Counsel for Appellee Allied Marine, Inc.

Bayramoglu Law Offices – Counsel for Appellees California Yacht Brokers Association, Inc., Denison Yachts International, LLC

Blechman, William Jay– Counsel for Appellee International Yacht Brokers Association, Inc.

Boats Group, LLC – Appellee

Boni, Michael J. – Counsel for Appellee Magna Charter, LLC

Boni Zack & Snyder, LLC – Counsel for Appellee Magna Charter, LLC

Boutwell & Connick - Counsel for Appellee HMY Yacht Sales, Inc.

Brockmeyer, Michael F. – Counsel for Appellee Allied Marine, Inc.

Brooks, Brian D. – Counsel for Appellee Tricia Defosey

Brown, Christopher J. – Counsel for Boats Group, LLC

Bucciero, Lea Pilar – Counsel for Appellee Ya Mon Expeditions, LLC

Burstyn Law PLLC – Counsel for Boats Group, LLC

Burstyn, Sean Alexander – Counsel for Boats Group, LLC

Buterman, Lawrence E. – Counsel for Boats Group, LLC

California Yacht Brokers Association, Inc. – Appellee

Carlton Fields PA – Counsel for Yacht Brokers Association of America, Inc.

Catamaran Sales, Inc. - Appellee

Cohen, Alexander Charles – Counsel for Appellees Ya Mon Expeditions, LLC, Kip Lamar Snell, Magna Charter, LLC, Tricia Defosey

Connick, Jr., A. Thomas – Counsel for Appellee HMY Yacht Sales, Inc.

Corrigan, Jeffrey J. – Counsel for Appellee Magna Charter, LLC

Costa, Paul – Counsel for Appellee Magna Charter, LLC

Crary Buchanan, P.A. – Counsel for Appellee United Yacht Sales, LLC

Criden & Love PA – Counsel for Appellee Magna Charter, LLC

Davidson, Stuart Andrew – Counsel for Appellee Kip Lamar Snell

Dearman, Mark Jeffrey – Counsel for Appellee Ya Mon Expeditions, Kip Lamar Snell, Magna Charter, LLC, Tricia Defosey

Defosey, Tricia – Appellee

Denison Yachts International, LLC – Appellee

Diaz, Nestor Galarza – Counsel for Appellee Ya Mon Expeditions, LLC

Eichel, Benjamin J. – Counsel for Appellee Magna Charter, LLC

Easu, David B. – Counsel for Yacht Brokers Association of America, Inc.

Fine Kaplan & Black, RPC – Counsel for Appellee Magna Charter, LLC

Fitzgerald, III, Roy E. – Counsel for Appellant YATCO, LLC

Foreman, Jeffrey Todd – Counsel for Appellee International Yacht Brokers Association, Inc.

Foust, Tracy Segal – Counsel for Appellant YATCO, LLC

Fraser Yachts California Corporation – Appellee (a wholly-owned subsidiary of MarineMax, Inc., which is a publicly held company). ***Publicly Traded: HZO (NYSE)***.

Fraser Yachts Florida, Inc – Appellee (a wholly-owned subsidiary of MarineMax, Inc., which is a publicly held company. MarineMax, Inc. has no parent corporation and is unaware of any individual or entity that owns ten percent (10%) or more of its common stock).

Galati Yacht Sales, LLC – Appellee

Gallagher & Kennedy PA – Counsel for Appellee Ya Mon Expeditions, LLC

Geller, Paul Jeffrey – Counsel for Appellee Kip Lamar Snell

Gittleman, Jeffrey B. – Counsel for Appellee Magna Charter, LLC

Glancy Prongay & Murray LLP – Counsel for Appellee Tricia Defosey

Gordon Rees Scully Mansukhani – Counsel for Appellee Northwest Yacht Brokers Association

Gray, Joshua B. – Counsel for Appellee International Yacht Brokers Association, Inc.

Harris, M. Derek – Counsel for Yacht Brokers Association of America, Inc.

Hasdoo, Odeshoo – Counsel for Appellee OneWater Marine, Inc.

Haug Partners, LLP – Counsel for Appellee Allied Marine, Inc.

Haviland, Graham – Counsel for Boats Group, LLC

Heim, Emily Marie – Counsel for Appellees California Yacht Brokers Association, Inc., Denison Yachts International, LLC

HMY Yacht Sales, Inc. – Appellee (Has no parent corporation, and no corporation, publicly held or otherwise, owns 10% or more of its stock).

Holland & Knight LLP – Counsel for Appellee Northwest Yacht Brokers Association

International Yacht Brokers Association, Inc. – Appellee (Has no parent corporation, and no publicly held corporation owns ten percent (10%) or more of its common stock).

Jones Day – Counsel for Appellee OneWater Marine, Inc.

King, William F. – Counsel for Appellee Ya Mon Expeditions, LLC

K&L Gates LLP – Counsel for Appellees Fraser Yachts California Corporation, Northrop & Johnson Yacht Ships, LLC, Galati Yacht Sales, LLC, MarineMax East, Inc., MarineMax, Inc.

Kliebard, Kenneth M. - Counsel for Appellee HMY Yacht Sales, Inc.

Kip Lamar Snell - Appellee

Kully, David C. – Counsel for Appellee Northwest Yacht Brokers Association

LeVee, Jeffrey – Counsel for Appellee OneWater Marine, Inc.

Lagomasino, Leonor Maria – Counsel for Appellee Northwest Yacht Brokers Association

Latham & Watkins LLP – Counsel for Boats Group, LLC

Leonard, William J. – Counsel for Appellee Magna Charter, LLC

Liebenberg, Roberta D. – Counsel for Magna Charter, LLC

Love, Kevin Bruce – Counsel for Appellee Magna Charter, LLC

Magna Charter, LLC - Appellee

Mahoney, Stacey Anne - Counsel for Appellee HMY Yacht Sales, Inc.

MarineMax, Inc. – Appellee - *Publicly Traded: HZO (NYSE)*.

MarineMax East, Inc. – Appellee (a wholly-owned subsidiary of MarineMax, Inc., which is a publicly held company) (see above)

Mark, Etan – Counsel for Appellee Tricia Defosey

Mark Migdal & Hayden – Counsel for Appellee Tricia Defosey

Martinez, Christina H. – Counsel for Appellee Ya Mon Expeditions, LLC

Martinez, Michael E. – Counsel for Appellees Northrop & Johnson Yacht Ships, LLC, Galati Yacht Sales, LLC, MarineMax, Inc.

Martinez, Jr., Rebeca – Counsel for Appellee Ya Mon Expeditions, LLC

Martinez-Cid, Ricardo M. – Counsel for Appellee Ya Mon Expeditions, LLC

McEnroe, William T. - Counsel for Appellee HMY Yacht Sales, Inc.

Mitchell, David W. – Counsel for Appellee Kip Lamar Snell

Moore, Hon. K. Michael - U.S. District Judge for the Southern District of Florida (Miami)

Morgan, Lewis & Bockius, LLP - Counsel for Appellee HMY Yacht Sales, Inc.

Mrachek Fitzgerald Rose Konopka Thomas & Weiss, P.A. n/k/a Taft Stettinius & Hollister LLP - Counsel for Appellant YATCO, LLC

The Multihull Company, LLC - Appellee

Napoli Shkolnik – Counsel for Appellee Ya Mon Expeditions, LLC

Napoli Shkolnik NSPR Law Services, LLC – Counsel for Appellee Ya Mon Expeditions, LLC

Napoli Shkolnik, PLLC – Counsel for Appellee Ya Mon Expeditions, LLC

Natter, Benjamin – Counsel for Appellee Allied Marine, Inc.

Neal, Kevin D. – Counsel for Appellee Ya Mon Expeditions, LLC

Northrop & Johnson Yacht Sales, LLC – Appellee (a subsidiary of a publicly held company, MarineMax, Inc). (see above)

Northrop & Johnson Yacht Ships, LLC – Appellee (a subsidiary of a publicly held company, MarineMax, Inc.) (see above)

Northwest Yacht Brokers Association – Appellee

Nussbaum Law Group, P.C. – Counsel for Appellee Magna Charter, LLC

Nussbaum, Linda P. – Counsel for Appellee Magna Charter, LLC

Obermayer Rebman Maxwell & Hippel LLP – Counsel for Appellee Magna Charter, LLC

OneWater Marine, Inc. – Appellee - ***Publicly Traded: ONEW (NYSE)***

Patterson, Jennifer – Counsel for Appellee Allied Marine, Inc.

Paul, Christina McGinley – Counsel for Appellees Fraser Yachts California Corporation, Northrop & Johnson Yacht Ships, LLC, Galati Yacht Sales, LLC, MarineMax East, Inc., MarineMax, Inc., Fraser Yachts Florida, Inc.

Perrone, Jennifer – Counsel for Appellant YATCO, LLC

Podhurst Orseck, P.A. – Counsel for Appellee Ya Mon Expeditions, LLC

Pogust Goodhead LLC – Counsel for Appellee Magna Charter, LLC

Reid, Lissette M. - Magistrate Judge, United States District Court for the Southern District of Florida

Ralston, Kenneth N. – Counsel for Appellee Ya Mon Expeditions, LLC

Rathbun, Anna M. – Counsel for Boats Group, LLC

Robbins Geller Rudman & Dows LLP – Counsel for Appellees Ya Mon Expeditions, LLC, Kip Lamar Snell, Magna Charter, LLC, Tricia Defosey

Rogers, Jr., Thomas Bowen – Counsel for Appellee Kip Lamar Snell

Rose, Alan B. – Counsel for Appellant YATCO, LLC

RJC Yacht Sales, Inc. – Appellee

Saladrigas, Caitlin F. – Counsel for Appellee Northwest Yacht Brokers Association

Shingler, III, Arthur L. – Counsel for Appellee Kip Lamar Snell

Shkolnik, Hunter J. – Counsel for Appellee Ya Mon Expeditions, LLC

Sindoni, John E. – Counsel for Appellee Magna Charter, LLC

Smith, Brian J. – Counsel for Appellees Northrop & Johnson Yacht Ships, LLC, Galati Yacht Sales, LLC, MarineMax, Inc.

Snyder, Joshua D. – Counsel for Appellee Magna Charter, LLC

Soto, Ana Maria Cristina Perez – Counsel for Appellee OneWater Marine, Inc.

Spector, Jeffrey L. – Counsel for Appellee Magna Charter, LLC

Spector Roseman & Kodroff PC – Counsel for Appellee Magna Charter, LLC

Sperling Kenny Nachwalter, LLC – Counsel for Appellee International Yacht Brokers Association, Inc.

Stern, Justin M.L. - Counsel for Appellee HMY Yacht Sales, Inc.

Sunshine Cruising Yachts LLC – Appellee

Taft Stettinius & Hollister LLP - Counsel for Appellant YATCO, LLC

Talbot, Megan J. – Counsel for Appellee Magna Charter, LLC

Taylor, Lindsey Handley – Counsel for Appellee Kip Lamar Snell

Turnbull, W. Scott – Counsel for Appellee United Yacht Sales, LLC

United Yacht Sales, LLC – Appellee (A Florida Limited Liability Company, which is wholly-owned by Peter A. Schmidt, Jeffrey D. Palmer and BRB IV, LLC, a Florida Limited Liability Company).

Vakharia, Aakruti G. – Counsel for Appellee Allied Marine, Inc.

Weinshall, Matthew – Counsel for Appellee Ya Mon Expeditions, LLC

Weiss, Gregory S. – Counsel for Appellant YATCO, LLC

Wites & Kapetan, PA – Counsel for Appellee Kip Lamar Snell

Wites Law Firm – Counsel for Appellee Kip Lamar Snell

Wites, Marc Aaron – Counsel for Appellee Kip Lamar Snell

Wolf, Charles Ferdinand – Counsel for Appellees Fraser Yachts California Corporation, Northrop & Johnson Yacht Ships, LLC, Galati Yacht Sales, LLC, MarineMax East, Inc., MarineMax, Inc., Fraser Yachts Florida, Inc.

Worth Avenue Yachts, LLC – Appellee

Ya Mon Expeditions, LLC – Appellee

Yacht Brokers Association of America, Inc. – Appellee

Yachting Assets and Operations LLC – Appellee

YATCO, LLC – Appellant (does not have any parent corporations, and no publicly held corporation owns more than 10% of its stock).

Zeytoonian, Caiti - Counsel for Appellee HMY Yacht Sales, Inc.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ..................................................... i

TABLE OF AUTHORITIES ...................................................................... xiii

STATEMENT REGARDING ORAL ARGUMENT ............................................ 1

CERTIFICATE OF TYPE SIZE AND STYLE ................................................. 2

PREFACE ...................................................................................................... 2

STATEMENT OF JURISDICTION ................................................................... 3

I.    STATEMENT OF THE ISSUES ................................................................. 4

II.   STATEMENT OF THE CASE AND OF THE FACTS ............................... 4

      A.    The Nature of the Case .................................................................. 4

      B.    The Course of Proceedings and Disposition in the Court Below ........ 5

      C.    Statement of the Facts .................................................................... 7

      D.    Standard of Review ...................................................................... 12

III.  SUMMARY OF THE ARGUMENT ......................................................... 12

IV.   ARGUMENT ........................................................................................... 14

      POINT I:  PLAINTIFFS ARE BOUND TO ARBITRATE
      THROUGH AGENCY PRINCIPLES. .......................................... 14

      A.    YATCO's right to arbitration arises from its valid written
            Agreement. ................................................................................. 14

      B.    Plaintiffs entered agency relationships with their brokers. ............. 16

      C.    The brokers acted as Plaintiffs' agents when listing vessels on
            YATCO's websites. ...................................................................... 18

      D.    Agents can bind non-signatories to arbitration agreements. ........... 18

      E.    Plaintiffs are bound through their brokers to the Agreement's
            arbitration provision based on agency principles. ......................... 22

      POINT II:  ESTOPPEL REQUIRES PLAINTIFFS TO ARBITRATE. ...... 25

      A.    Estoppel prevents Plaintiffs from suing based on some of the
            requirements to use YATCO's website while ignoring others. ......... 25

YATCO, LLC v. YA MON EXPEDITIONS, LLC, et al.
Case No. 25-10140-H
**TABLE OF CONTENTS**
(continued)

**Page**

B.     YATCO's broad arbitration clause directly encompasses
        Plaintiffs' claims..................................................................................26

C.     Alternatively, Plaintiffs' claims significantly "relate to" the
        Agreement and are subject to the Agreement's arbitration
        clause. ................................................................................................27

D.     The district court failed to consider the nature of the claims
        against YATCO.................................................................................28

POINT III:  PLAINTIFFS' CLAIMS AGAINST YATCO SHOULD
        BE ARBITRATED.............................................................................29

A.     The Delegation Clause controls and requires the arbitrators to
        decide the question of arbitrability..................................................29

B.     Even if the Court determines the applicability of the arbitration
        provision, it applies to Plaintiffs' claims...........................................30

C.     There was no waiver of the right to arbitrate ....................................31

V.     CONCLUSION...........................................................................................32

CERTIFICATE OF COMPLIANCE................................................................34

CERTIFICATE OF SERVICE .........................................................................34

174900598v6

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Dean Witter Reynolds, Inc. v. Byrd*,
    470 U.S. 213 (1985)........................................................................14

*Gregory v. Electro-Mechanical Corp.*,
    83 F.3d 382 (11th Cir. 1996) ............................................27

*Gutierrez v. Wells Fargo Bank, N.A.*,
    889 F.3d 1230 (11th Cir. 2018) ........................................32

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
    139 S. Ct. 524 (2019)........................................................30

*Jackson v. World Wrestling Enm't., Inc.*,
    95 F.4th 390 (5th Cir. 2024) .............................................21

*Kidd v. Equitable Life Assur. Soc'y of Am.*,
    32 F.3d 516 (11th Cir. 1994) ............................................12

*Lambert v. Austin Ind.*,
    544 F.3d 1192 (11th Cir. 1994) ........................................12

*Marchisio v. Carrington Mortg. Serv., LLC*
    919 F.3d 1288 (11th Cir. 2019) ........................................15

*Mitsubishi Motors v. Soler Chrysler-Plymouth*,
    473 U.S. 614 (1985) ..........................................................31

*Morgan v. Sundance, Inc.*,
    596 U.S. 411 (2022)......................................................9, 15

*Osterer v. BAM Trading Services Inc.*,
    753 F. Supp. 3d 1289 (S.D. Fla 2024)..........................25, 26

*PacifiCare Health Systems, Inc. v. Book*,
    123 S. Ct. 1531 (2003)......................................................31

*Peters v. The Keyes Co.*,
    402 F. App'x 448 (11th Cir. 2010)(unpublished)...........23, 24

*Sims v. Clarendon Nat'l Ins. Co.*,
  336 F. Supp. 2d 1311 (S.D. Fla. 2004) ..................................................14, 18, 29

*U.S. Nutraceuticals, LLC v. Cyanotech Corp.*,
  769 F.3d 1308 (11th Cir. 2014) ........................................................................12

**State Cases**

*Airbnb, Inc. v. Doe*,
  336 So. 3d 698 (Fla. 2022) ...............................................................................30

*BDO Seidman, LLP v. Bee*,
  970 So. 2d 869 (Fla. 4th DCA 2007)..................................................................25

*Bergeron Environ. and Recycling, LLC v. LGL Recyclings, LLC*,
  398 So. 3d 988 (Fla. 4th DCA 2024)..................................................................25

*Fi-Evergreen Woods LLC v. Estate of Robinson*,
  172 So. 3d 493 (Fla. 5th DCA 2015)........................................................ 15, 19

*Fla. Power & Light Co. v. McRoberts*,
  257 So. 3d 1023 (Fla. 4th DCA 2018) ...............................................................16

*Gay v. Assoc. Cas. In. Co.*,
  103 3d 1028, 1031 (Fla. 5th DCA 2012)............................................................23

*Hershey v. Keyes Co.*,
  209 So. 2d 240 (Fla. 3d DCA 1968)...................................................................16

*Jackson v. Shakespeare Foundation*,
  108 So. 3d 587 (Fla. 2023) ........................................................................15, 27

*Kumar Corp. v. Nopal Lines, Ltd.*,
  462 So. 2d 1178 (Fla. 3d DCA 1985) ................................................................23

*Martha A. Gottfried, Inc. v. Paulette Koch Real Estate, Inc.*,
  778 So. 2d 1089 (Fla. 4th DCA 2001).........................................................15, 17

*Massage Envy Franchising, LLC v. Doe*,
  339 So. 3d 481 (Fla. 5th DCA 2022)..................................................................15

*Miami Dolphins, Ltd. v. Engwiller*,
  410 So. 3d 658 (Fla. 3d DCA 2025).............................................................*passim*

*Midwest Mut. Ins. Co. v. Santiesteban,*
  287 So. 2d 665 (Fla. 1973). ...............................................................12

*Nestler-Poletto Realty, Inc. v. Kassin*,
  730 So. 2d 324 (Fla. 4th DCA 1999)..................................................24

*Paquin v. Campbell*,
  378 So. 3d 686 (Fla. 5th DCA 2024) .................................................15

*Phillips v. Lyons Heritage Tampa, LLC*,
  341 So. 3d 1171 (Fla. 2d DCA 2022)..................................................27

*Seifert v. U.S. Home Corp.,*
  750 So. 2d 633 (Fla. 1999), *rev. denied,* No. SC 22-918 ..................14

*Spurrier v. United Bank*,
  359 So. 2d 908 (Fla. 1st DCA 1978) ..................................................21

*Stalley v. Transitional Hosps. Corp. of Tampa, Inc.,*
  44 So. 3d 627 (Fla. 2d DCA 2010) ............................................17, 19

*Timber Pines Plaza, LLC v. Zabrzyski*,
  211 So. 3d 1147 (Fla. 5th DCA 2017)............................................13

**Federal Statutes**

9 U.S.C. § 16(a)(1)(C) ............................................................................1

28 U.S.C.
  §§ 1331 and 1337...............................................................................1
  § 1332(d)(2) ......................................................................................1

Clayton Antitrust Act of 1914, 15 U.S.C. § 26.........................................1

Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq.*.....................................14

Sherman Antitrust Act of 1890, 15 U.S.C. § 1 .......................................1

**Other Authorities**

*Black's Law Dictionary, Broker,*  (12th ed. 2024) ................................16

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Appellant, YATCO, LLC, recognizes the narrow issue on appeal involves a straightforward analysis of an arbitration issue, but given the consequential nature of being forced to defend a federal class action, YATCO requests oral argument to address any questions the Court may have as to the issues raised by this appeal.

## CERTIFICATE OF TYPE SIZE AND STYLE

Appellant, YATCO, LLC, has used font size 14 in Times New Roman in preparing this Brief.

## PREFACE

Appellant will use the following abbreviations for the persons and entities involved in this appeal:

- Appellant, YATCO, LLC, shall be referred to as "YATCO";

- Appellee, YA MON EXPEDITIONS, LLC, BLUEBERRY ENTERPRISES, LLC, MAGNA CHARTA, LLC, PRIDE CONTRACTING, INC., KIP LAMAR SNELL, JUAN GALAN, and the proposed class are collectively referred to as "Plaintiffs";

- The twenty other defendants named in the underlying case, shall be collectively referred to as "Defendants";

- The terms "boat" and "yacht" are used interchangeably as in the Consolidated Class Action Complaint. (ECF No. 140 at fn. 1).

- In citations, all internal citations are omitted unless specified otherwise.

## <u>STATEMENT OF JURISDICTION</u>

This appeal arises from the January 9, 2025 Order entered by the district court denying Defendant YATCO's Motion to Compel Arbitration. (ECF No. 223). YATCO timely filed this appeal on January 14, 2025. (ECF No. 233).

Plaintiffs' Consolidated Class Action Complaint (the "Complaint") alleged the district court has federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337 based on claimed violations of the Sherman Antitrust Act of 1890, 15 U.S.C. § 1, and the Clayton Antitrust Act of 1914, 15 U.S.C. § 26.

In addition, Plaintiffs alleged subject matter jurisdiction under 28 U.S.C. § 1332(d)(2) because the proposed class contains more than 100 persons, the aggregate amount in controversy exceeds $5,000,000, and at least one member of the proposed class is a citizen of a state different from Defendants.

This Court has jurisdiction over this appeal pursuant to 9 U.S.C. § 16(a)(1)(C) because the order under review denied an application or motion to compel arbitration.

I.      **STATEMENT OF THE ISSUES**

The issue on appeal is whether YATCO is entitled to compel arbitration under

the "YATCO SaaS Subscriber Agreement," which was undisputedly agreed to by

every broker or owner who listed a boat for sale on YATCO's website.  The issue is

whether, under Florida law, the sellers (boat owners) are bound by the arbitration

provisions signed by their respective agents (yacht brokers) because the broker could

not list a boat on YATCO's website without agreeing to arbitration.

II.     **STATEMENT OF THE CASE AND OF THE FACTS**

A.      **The Nature of the Case**

This putative Consolidated Class Action Complaint alleges that YATCO,

along with other Defendants, conspired to inflate the brokerage fees that the putative

class members paid to sell their pre-owned yachts.  (ECF No. 140).  Plaintiffs allege

YATCO operates an online listing service for boats and yachts, similar to the

multiple listing service or "MLS" for home sales.  (*Id.* at ¶ 59).  Plaintiffs allege they

sold their pre-owned boats through brokers who listed them for sale on a multiple

listing services and paid a broker commission.  (*Id.* at 2).

To list a boat on YATCO's website, a broker must execute a SaaS Subscriber

Agreement ("Agreement"), which, among other things, requires disputes related to

the Agreement and YATCO's services be arbitrated.  (ECF No. 185–1, ¶¶ 6–11).The

owner's brokers acts as the owner's agent for the purpose of listing the vessels on

YATCO's site, and each such owner directly benefitted from having its boat listed

for sale.  Therefore, each owner whose boat was listed on YATCO's site is bound to

its agent's agreement to binding arbitration.

Based upon the Agreements, YATCO moved to compel arbitration of

Plaintiffs' claims against it.  (ECF No. 185).  YATCO argued that the arbitration

clause of the Agreement applies to Plaintiffs because the brokers who signed it were

their agents, and, based on the doctrine of estoppel. *Id.*  This appeal follows the

district court's denial of YATCO's motion to compel arbitration.  (ECF No. 223).

### B.  <u>The Course of Proceedings and Disposition in the Court Below</u>

This lawsuit is a consolidation of four separate actions in which Plaintiffs

allege various Defendants enforced "an anti-competitive rule that requires pre-

owned boat and yacht sellers to pay a brokerage fee to the buyer's broker, as well as

a total aggregate commission fee that is inflated as condition for selling their boats

or yachts."  *See* (Order on Consolidating Cases, ECF No. 40 at 2).

The district court ordered that Defendants file joint motions with co-parties

unless there was a conflict, which would be explained in a separate motion.  (ECF

No. 4).  YATCO therefore filed a Motion for Leave to File Motion to Compel

Arbitration and Stay Proceedings and Incorporated Memorandum of Law with the

proposed motion attached.  (ECF No. 174).  In an abundance of caution, because it

had not gotten leave to move to compel arbitration on the deadline for motions to

dismiss, YATCO joined in  Defendants' Joint Motion to Dismiss (ECF No. 178),

but then did not join in Defendants' Reply in Support of the Motion to Dismiss. (ECF No. 192 fn. 2).

After leave was granted (ECF No. 183), YATCO filed its Motion to Compel Arbitration and Stay Proceedings and Incorporated Memorandum of Law ("Motion") on September 4, 2024. (ECF No. 185). Plaintiffs filed their Brief in Opposition on September 9, 2024, (ECF No. 189), and YATCO filed its Reply on September 16, 2024. (ECF No. 191). The district court entered an order denying the Motion to Compel Arbitration on January 9, 2025 without a hearing. (ECF No. 223).

YATCO filed the present appeal on January 14, 2025. (ECF No. 233).

Before YATCO could move for a stay in the district court, the district court granted a motion to dismiss the complaint with leave to amend. (ECF No. 237). Accordingly, YATCO filed a Motion to Abate or Temporarily Relinquish Jurisdiction on February 7, 2025. (11th Cir. Doc. No. 11).

On March 3, 2025 this Court granted that Motion in part and ordered that the appeal be held in abeyance during limited remand. (11th Cir. Doc. No. 15). Following resolution of Plaintiffs/Appellees' motion to clarify that stay order, a briefing schedule was entered. *See* (11th Cir. Doc. No. 16–20, 23).

C.    **Statement of the Facts**

1.    YATCO's mandatory Agreement for listing on its website

YATCO is a Florida business that provides websites and boat member listing services known as YATCO.com and YATCOBOSS.com.  (ECF No. 185–1 ¶ 5). YATCO requires any broker wishing to list a boat on YATCO's website to first execute a YATCO SaaS Subscriber Agreement.  (*Id.* ¶¶ 7–11).

During the putative class period, the Agreement contained a mandatory provision for binding arbitration, a class action waiver, and delegation of authority that an arbitrator rule on the scope of arbitral issues.  (ECF No. 185–1 ¶ 8).  The Agreement begins:

> IMPORTANT NOTICE:  DISPUTES ABOUT THIS AGREEMENT AND THE SERVICES PROVIDED BY YATCO ARE SUBJECT TO BINDING ARBITRATION AND A WAIVER OF CLASS ACTION RIGHTS AS DETAILED IN THE "MANDATORY ARBITRATION AND CLASS ACTION WAIVER" SECTION BELOW.

(ECF No. 185–1 at 5).

Section 14.3 is entitled Mandatory Binding Arbitration and Class Action Waiver:

> [§ 14.3] PLEASE READ THIS SECTION CAREFULLY.  IT AFFECTS YOUR LEGAL RIGHTS, INCLUDING YOUR RIGHT TO FILE A LAWSUIT IN COURT.  This Agreement is governed by and construed in accordance with the internal laws of the State of Florida without giving effect to any choice or conflict of law provision or rule that would require or permit the application of the laws of any jurisdiction other than those of the State of Florida.  The application of the United Nations Convention on Contracts for the International Sale of Goods is expressly excluded.

**<u>Claims relating to this Agreement or the Service will be resolved
through final and binding arbitration</u>**, except as set forth below.  The
parties agree that the Agreement affects interstate commerce and that
the Federal Arbitration Act governs the interpretation and enforcement
of these arbitration provisions.  Initial Dispute Resolution:  The parties
agree that most disputes can be resolved without resort to litigation.
The parties agree to use their best efforts to settle any dispute, claim,
question, or disagreement directly through consultation with each other,
and good faith negotiations shall be a condition to either party initiating
a lawsuit or arbitration.  Accordingly, before initiating a lawsuit or
arbitration, Subscriber Agrees to contact YATCO to attempt to resolve
the dispute in good faith.

Binding Arbitration & Class Action Waiver:  If the parties do not reach
an agreed-upon solution within a period of thirty (30) days from the
time the informal dispute resolution is initiated under the Initial Dispute
Resolution provision above, then either party may initiate binding
arbitration as the **sole** means to resolve claims, subject to the terms set
forth below.  Specifically, all claims arising out of or relating to the
Agreement (including its formation, performance and breach), the
parties' relationship with each other and/or your use of the Services
shall be finally settled by binding arbitration administered by the
American Arbitration Association under its Commercial Arbitration
Rules, excluding any rules or procedures governing or permitting class
actions.

\*\*\*

THE PARTIES AGREE THAT EACH MAY BRING CLAIMS
AGAINST THE OTHER ONLY IN ITS INDIVIDUAL CAPACITY,
AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY
PURPORTED CLASS OR REPRESENTATIVE PROCEEDING.

\*\*\*

The arbitrator, and not any federal, state or local court or agency, shall
have exclusive authority to resolve all disputes arising out of or relating
to the interpretation, applicability, enforceability or formation of the
Agreement, including, but not limited to any claim that all or any part
of the Agreement is void or voidable, or whether a claim is subject to
arbitration.

(ECF No. 185–1 at 25-27) (emphasis added).

2.     All brokers listing on YATCO's website must sign the Agreement

The undisputed record before the district court demonstrated that each and every broker listing a boat on YATCO's website must sign the mandatory arbitration agreement.  (ECF No. 185–1 ¶¶ 6, 10–11).  The Agreement has been in place since 2020, the beginning of the proposed class period.  (*Id*. ¶ 8).  All parties who list on a YATCO website must execute the Agreement **before** a boat can be listed.  (*Id*. ¶¶ 9-10).  Without accepting the Agreement, including the binding arbitration and class action waiver provisions, no YATCO subscriber could list a boat for sale on YATCO's websites or platforms.  (*Id.* ¶ 14).

Early in this case, YATCO requested Plaintiffs identify the brokers they allege listed their yachts with YATCO.  (*Id.* ¶ 12–13).  Plaintiffs declined, stating YATCO could obtain the information in discovery.  *Id.*  If YATCO participated in formal discovery, it might waive its right to arbitration.  *See Morgan v. Sundance, Inc.*, 596 U.S. 411, 417 (2022).  Accordingly, YATCO was unable to produce the Agreement signed by Plaintiffs' specific brokers.

3.     Plaintiffs' allegations

Plaintiffs allege in the Complaint to be acting on behalf of purported sellers of pre-owned boats in the United States during the class period, who either:

(1) sold a pre-owned yacht, utilizing a yacht broker who listed the vessel for sale on a multiple listing service operated by any of the Defendants, and paid

a commission in connection with the sale; or

(2) paid a commission to a broker affiliated with one of the Defendant

Brokers.  (ECF No. 140 ¶ 181).

Plaintiffs assert antitrust violations based on an alleged "conspiracy to fix

commissions" and an alleged "concerted refusal to deal" and seek damages as well

as declaratory and injunctive relief.  (ECF No. 140 at 50, 52).

Plaintiffs allege a conspiracy among three sets of Defendants: yacht brokers,

yacht broker associations, and multiple listing services. The brokers are alleged to

profit by receiving inflated, non-competitive commissions.  (ECF No. 140 ¶ 161).

The associations are alleged to require brokers to comply with certain standards

including a seller-pays-the-buyer's-broker clause.  (*Id.* ¶ 52).  The multiple listing

services, including YATCO, are alleged to participate in the conspiracy by only

allowing brokers certified by the yacht broker associations to list on their websites

and requiring a specific form of listing agreement. (*Id.* ¶¶ 110, 126).

Plaintiffs' theory is that only brokers who have agreed to the allegedly anti-

competitive practices of the yacht broker associations can sell through Defendants'

MLS websites, which is the most common way to list boats for sale.  (*Id.* at ¶¶ 82,

161).  The purported effect of this is to increase the commissions paid by Plaintiffs

and similarly situated yacht sellers.  (*Id.* at ¶ 191).

4.    The district court's Order

The district court denied YATCO's Motion to Compel Arbitration based on the parties' briefs.  (ECF No. 223).  First, the district court found Plaintiffs are not bound by the Agreement through their broker's signatures because the YATCO Agreement remained effective indefinitely.  (*Id.* at 5–6). Therefore, the district court found YATCO failed to establish the broker formed an agency relationship with the owner-seller ***at the time*** the broker signed the YATCO Agreement.[1]  (*Id.* at 5) (emphasis added).

Second, the district court relied upon a series of cases addressing the opposite fact pattern—a non-signatory broker trying to compel arbitration under a real estate contract between buyer and seller.  (*Id.* at 4).  In doing so, the district court focused on whether Plaintiffs were the primary intended beneficiaries of the YATCO Agreement.  (*Id.* at 5–6).  The district court concluded the Agreement served the broker's business, rather than the Plaintiffs' interest in selling their vessels.  *Id*.

Finally, the district court found the Plaintiffs are not estopped from refusing to arbitrate because their claims relate to "Defendant's collection of fees," and not the Agreement.  (*Id.* at 6–7).  Having concluded the Plaintiffs were not bound to

---

[1] This temporal issue—that the agent signed the arbitration agreement before developing any relationship with its principal boat owner—is expressly addressed in a significant Florida appellate court decision rendered after the district court ruled. *Miami Dolphins, Ltd. v. Engwiller,* 410 So. 3d 685 (Fla. 3d DCA 2025) (addressed in detail *infra* pp. 19-21).

arbitrate, the district court denied the motion to compel. (*Id*. at 7). This appeal timely ensued. (ECF No. 233).

### D. <u>Standard of Review</u>

Review of a district court's order denying a motion to compel arbitration is *de novo. U.S. Nutraceuticals, LLC v. Cyanotech Corp.*, 769 F.3d 1308, 1310 (11th Cir. 2014); *Lambert v. Austin Ind.*, 544 F.3d 1192, 1193 n.1 (11th Cir. 1994) (citing *Kidd v. Equitable Life Assur. Soc'y of Am.*, 32 F.3d 516, 518 (11th Cir. 1994)).

## III. <u>SUMMARY OF THE ARGUMENT</u>

YATCO operates a website on which, for a fee, brokers and individuals can display information about vessels available for sale. YATCO is a monthly subscription service that gives the broker access to potential buyers and exposure for the sale of vessels. YATCO is a clearinghouse of information; it is not a brokerage service or determiner of brokerage commissions.

To exist in this multi-billion dollar marketplace while charging small monthly fees, YATCO has set very strict rules for those seeking to utilize its webservice to showcase and market vessels. Persons using the service must execute an Agreement requiring arbitration of disputes and waiving any rights to a jury trial or a class action. Such provisions are common, standard, and enforceable in interstate commerce. "The courts favor arbitration to expedite claims and reduce litigation." *Midwest Mut. Ins. Co. v. Santiesteban*, 287 So. 2d 665, 667 (Fla. 1973); *see also*

*Timber Pines Plaza, LLC v. Zabrzyski*, 211 So. 3d 1147, 1150 (Fla. 5th DCA 2017) ("As a matter of public policy, Florida law favors arbitration as an efficient means of settling disputes because it avoids the delays and expenses of litigation.").

The arbitration provisions of YATCO's Agreement are an integral part of its business and allow it to operate with certainty. It would be unfair and contrary to Florida law to permit a vessel owner to accept the benefits of listing on YATCO through a broker, without regard to the corresponding conditions. Because seller's contractually authorized agent agreed to arbitration as a condition of listing the Plaintiff's vessel for sale, each such Plaintiff is bound to arbitrate any claims against YATCO.

Both Federal and Florida law favor arbitration provisions. In this case, there is no question there is a signed arbitration agreement. The arbitration agreement was mandatory. Contrary to Plaintiffs' arguments and the district court's ruling, the brokers for the yet-identified vessel owners who used YATCO's services were acting subject to the vessel owner's authorization or control when the vessel owner allowed its broker to list the vessel for sale on YATCO's websites. Therefore, the principal boat owners are bound to the terms agreed to by their broker-sale agents. Settled Florida law compels arbitration of any dispute between any putative class member and YATCO.

In addition, the putative Plaintiffs who sold a boat listed on YATCO benefited from their broker's choice to display their listing on YATCO's websites, and benefitted from the fact their boats sold for an acceptable price. These putative Plaintiffs received the benefit of YATCO's services and are bound by the mandatory arbitration clause.

Therefore, the district court should have compelled arbitration of the claims against YATCO.

## IV. ARGUMENT

> ### POINT I: PLAINTIFFS ARE BOUND TO ARBITRATE THROUGH AGENCY PRINCIPLES.

> ### A. YATCO's right to arbitration arises from its valid written Agreement.

Federal and Florida law allow a party to arbitrate where: (1) a valid, written agreement exists between the parties containing an arbitration clause; (2) an arbitrable issue exists; and, (3) the right to arbitrate has not been waived. *See Sims v. Clarendon Nat'l Ins. Co.*, 336 F. Supp. 2d 1311, 1326 (S.D. Fla. 2004); *Miami Dolphins,* 410 So. 3d at 688 (citing *Seifert v. U.S. Home Corp.*, 750 So. 2d 633, 636 (Fla. 1999), *rev. denied,* No. SC 22-918, 2022 WL 4939287). When there is a valid, signed arbitration agreement which is binding against the party seeking to litigate a dispute, courts must direct the parties to proceed to arbitration. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 281 (1985).

Agency issues are governed by Florida law. *See, e.g.*, *Marchisio v. Carrington Mortg. Serv., LLC*, 919 F.3d 1288, 1311 (11th Cir. 2019) (applying Florida agency law)."Non-signatories may be bound by an arbitration agreement if dictated by ordinary principles of contract law and agency." *Martha A. Gottfried, Inc. v. Paulette Koch Real Estate, Inc.*, 778 So. 2d 1089, 1090 (Fla. 4th DCA 2001)."Non-signatories may be bound to arbitration agreements under theories of (1) incorporation by reference; (2) assumption; (3) agency; (4) veil piercing/alter ego; and (5) estoppel." *Miami Dolphins*, 410 So. 3d at 690 (citing *Paquin v. Campbell*, 378 So. 3d 686 (Fla. 5th DCA 2024)). Here, the Agreement was signed by the seller's agent, meaning the only question is whether the seller is bound to the Agreement.

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, *et seq.*, establishes a general federal "policy favoring arbitration." *Morgan,* 596 U.S. at 418."Because arbitration agreements are contracts, ordinary state law principles of contract formation apply." *Massage Envy Franchising, LLC v. Doe*, 339 So. 3d 481, 484 (Fla. 5th DCA 2022). "Court generally favor [arbitration] provisions, and will try to resolve an ambiguity in an arbitration provision in favor of arbitration." *Jackson v. Shakespeare Found.*, 108 So. 3d 587, 593 (Fla. 2023); *see also Fi-Evergreen Woods LLC v. Estate of Robinson,* 172 So. 3d 493, 497 (Fla. 5th DCA 2015) (quotation and citations omitted).

## B. Plaintiffs entered agency relationships with their brokers.

Plaintiffs allege that most large boats are sold through standard listing agreements "whereby the prospective seller of a yacht grants a particular broker the exclusive right to sell the yacht." (ECF No. 140 ¶ 7). Each of the individual Plaintiffs allege "representation" in the sale of their yacht by a broker and/or the execution of a Central Listing Agreement with a broker. (*Id.* at ¶ 26–31). By definition, a broker is "[a]n agent who acts as an intermediary or negotiator, esp. between prospective buyers and sellers." *Black's Law Dictionary, Broker*, (12th ed. 2024); *see also Hershey v. Keyes Co.,* 209 So. 2d 240, 242 (Fla. 3d DCA 1968) ("The essential and basic feature underlying the relation of a broker to his employer…is that of agency.").

Agency may be actual or apparent."[A]ctual agency requires (1) acknowledgment by the principal that the agent will act for him, (2) the agent's acceptance of the undertaking, and (3) control by the principal over the actions of the agent." *Miami Dolphins*, 410 So. 3d at 690 (citing *Fla. Power & Light Co. v. McRoberts*, 257 So. 3d 1023, 1026 (Fla. 4th DCA 2018)). "Apparent agency, also known as implied agency, requires (1) a representation by the principal that the actor is his or her agent; (2) reliance on that representation by a third party, and (3) a change in position by the third party in reliance on that representation." *Id.* at 690

(citing *Stalley v. Transitional Hosps. Corp. of Tampa, Inc.*, 44 So. 3d 627, 630 (Fla. 2d DCA 2010)).

In *Martha A. Gottfried, Inc. v. Paulette Koch Real Estate, Inc.*, 778 So. 2d 1089 (Fla. 4th DCA 2001), the court affirmed an order compelling arbitration, finding a real estate brokerage firm bound by an arbitration agreement signed by one of its brokers, because the brokerage accepted the benefits of the membership in a professional board:

> Non-signatories may be bound by an arbitration agreement if dictated by ordinary principles of contract law and agency. Furthermore, a third party beneficiary to a contract can be compelled to arbitrate. Therefore, Gottfried, while not a signatory to Hoffpauer's application for membership with the Palm Beach Board of Realtors, is, nevertheless, bound by her agreement to arbitrate, as having accepted the economic and professional benefits of Hoffpauer's membership with the board.

*Id*. at 1090.

YATCO presented evidence it will only accept listings on its websites when the Agreement has been signed. (ECF No. 185–1 ¶ 6).[2] YATCO also established that the terms of the Agreement have included the same arbitration clause, class action waiver, and arbitrability provision throughout the proposed class period. (*Id.* at ¶ 8).

---

[2] YATCO was unable to provide the signed Agreements because Plaintiffs declined to identify their brokers, the names of their boats, or when they were listed on YATCO's websites. (*Id.* at ¶¶ 12–13).

Notably, Plaintiffs did not counter YATCO's evidence by "affidavit or allegation of fact" to show their brokers did not sign the Agreement. *See Sims v. Clarendon Nat'l Ins. Co.*, 336 F. Supp. 2d 1311, 1313 (S.D. Fla. 2004) ("The party opposing a motion to compel arbitration … has the affirmative duty of coming forward by way of affidavit or allegation of fact to show cause why the court should not compel arbitration."). It must be assumed, as the district court did, that Plaintiffs' brokers validly executed the Agreement. (ECF No. 223 at 5).

### C.      The brokers acted as Plaintiffs' agents when listing vessels on YATCO's websites.

Any vessels belonging to Plaintiffs listed for sale on YATCO's websites were listed by brokers acting as the Plaintiffs' agents. In fact, Plaintiffs allege YATCO's rules specify in order for its broker members "to list their yacht listings on YATCO.com, they must show proof of a current Central Listing Agreement"—that is, proof of their agency. (ECF No. 140 ¶ 111).

Again, Plaintiffs do not dispute this, or suggest the Plaintiffs' brokers were not authorized to list with YATCO. To the contrary, they allege the "dominance of yachting MLS in the market" requires boat owners who want to sell their boats to sign a listing agreement with a broker and use a MLS. (*Id.* at ¶ 12).

### D.      Agents can bind non-signatories to arbitration agreements.

Non-signatories like Plaintiffs can be bound to agreements signed by their agents. "[A]n agent can bind a principal to an arbitration agreement just like any

other contract." *Fi-Evergreen Woods LLC v. Estate of Robinson*, 172 So. 3d 493,

497 (Fla. 5th DCA 2015).

> [G]eneral contract principles apply to arbitration agreements, such that "arbitration agreements [are] treated like all other contracts[,]" with the caveat that arbitration is "a favored means of dispute resolution[.]" … Given this well-established precedent, we hold that an agent can bind a principal to an arbitration agreement just like any other contract. There is no special rule requiring the principal to independently waive the right to a jury trial or expressly and separately acknowledge or agree that the agent is also authorized to waive a jury trial on his or her behalf.

*Id*. at 497 (internal citations omitted).

A non-signatory to an arbitration agreement is bound "when the signatory…is

authorized to act as the agent of the person sought to be bound." *Id*. at 495.[3] The

Third District Court of Appeal recently applied this rule in *Miami Dolphins, Ltd. v.

Engwiller*, 410 So. 3d 685, 691 (Fla. 3d DCA 2025). In that case, the plaintiff was

injured at Hard Rock Stadium, during a football game she attended with her mother

and boyfriend. *Id.* at 688. The plaintiff's mother received electronic tickets from

---

[3] On this point, *Fi-Evergreen* cites to *Stalley*, 44 So. 3d at 627, which Plaintiffs rely on below. (ECF No. 189 at 12). *Stalley* is easily distinguishable because there, the arbitration clause was not mandatory, but permissive. Therefore, even though the alleged agent had signed admission papers, and the principal had accepted the benefits of this admission for treatment, arbitration was not a condition of admission. Thus, the "Estate was not trying to take advantage of certain provisions of a contract while avoiding the application of other provisions of the same contract." *Id.* at 632. Because the arbitration agreement was a separate *optional* agreement, the alternate third-party beneficiary argument failed. *Id*. at 633.

her employer, which she downloaded by logging into the Miami Dolphins website on her mobile telephone. *Id.*

As part of the login process, and ***before there was any agency relationship formed between mother and daughter with respect to these tickets***, plaintiff's mother agreed to the terms of use. These terms included a broad, mandatory arbitration provision. *Miami Dolphins*, 410 So. 3d at 687. The plaintiff's mother displayed the three tickets on her mobile device to be scanned for entrance to the stadium. *Id.* at 688. The plaintiff was injured inside the stadium, when a fight broke out among fans, and she filed suit in state court for negligent security. *Id.* at 687. The team moved to compel arbitration based upon its standard, electronic terms of service, which was denied. The trial court based this denial on the defendant's failure "to attach the actual binding agreement or establish an agency relationship between [plaintiff] and her mother." *Id.* at 688. The Third District reversed.

After first determining the arbitration clause and other "ticketback" terms were sufficiently disclosed to plaintiff's mother through the process of claiming the tickets, the *Miami Dolphins* Court considered whether the plaintiff was also bound by these terms. *Id.* at 690. Plaintiff had no actual knowledge of the arbitration clause or any knowledge that there were terms and conditions associated with the tickets. *Id.* at 688. She no knowledge of the ticket or its terms, and had nothing to do with the ticket other than her act of accepting the benefit of entering the stadium.

The Third District found that when the plaintiff allowed her mother to present the tickets for admission to the stadium, her mother acted as her agent and the plaintiff was bound to arbitrate by principles of agency. *Id.* at 691. The Third District reasoned while the plaintiff's mother may not have acted with her authorization when she initially downloaded the tickets, she acted as plaintiff's agent "once [plaintiff] allowed her to present the ticket on her behalf to enter the stadium and attend the game." *Id.* at 691. As other courts have explained, "[r]atification, as applied to the law of agency, is the adoption or affirmance by a principal of the acts of his agent, either expressly, as by a written act, or impliedly, as by acceptance of the benefits of the contract." *Spurrier v. United Bank*, 359 So. 2d 908, 910 (Fla. 1st DCA 1978) (quotation omitted).

The *Miami Dolphins* Court also noted each person entering the stadium was required to agree to the "ticketback" terms, including arbitration. *Id.* at 691. Accordingly, the defendants "altered their position in reliance on this representation [that the plaintiff's mother was her agent], as they would not have admitted [plaintiff] into the stadium absent agreement to the Ticketback Terms." *Id.* at 691 (citing and applying *Jackson v. World Wrestling Enm't., Inc.*, 95 F.4th 390, 393 (5th Cir. 2024) ("Accepting the arbitration agreement—a required condition for [the plaintiff] to enter the event—was well within [agent]'s implied authority as [the plaintiff]'s agent to gain his entry into the stadium.")).

The *Miami Dolphins* case is squarely on point and correctly applies Florida law on agency principles to compel arbitration.

**E.**     **Plaintiffs are bound through their brokers to the Agreement's arbitration provision based on agency principles.**

The law on agency as applied by the *Miami Dolphins* Court applies equally here. The brokers were acting as Plaintiffs' agents, with authority to list boats for sale, at the moment they actually listed an owner's boat on YATCO's websites. Each of the brokers accepted the Agreement as a condition of listing vessels with YATCO, long before the formation of an agency relationship with a boat owner, the boat owner obtained the benefit of listing, and YATCO changed its position by permitting the boat to be listed. Accordingly, Plaintiffs are bound to the Agreement through their brokers as their agents. As noted in *Miami Dolphins*, it is irrelevant whether Plaintiffs were aware of the Agreement, or its terms, or when the Agreement was executed. *See Miami Dolphins*, 410 So. 3d at 691.

Even if the brokers had not been Plaintiffs' actual agents at the time they entered the Agreement, they acted with apparent agency when listing Plaintiffs' vessels with YATCO. Such ratification relates back and supplies the original authority. Just as the plaintiff in *Miami Dolphins* ratified her mother's agency when her mother presented the tickets at entry, the Plaintiffs here ratified their brokers' agency when their boats were listed for sale on YATCO's website. *See Miami Dolphins*, 410 So. 3d at 691.

In both instances, ratification included acceptance of the same terms that the agent accepted as a condition of use, regardless of whether the principal had knowledge of those terms. *Id.*; *see, e.g.*, *Gay v. Assoc. Cas. In. Co.,* 103 So. 3d 1028, 1031 (Fla. 5th DCA 2012) (expressing it is established Florida law that "notice to one's agent is notice to the principal"). In both instances, acceptance of the terms was a required condition for participation. YATCO, as the *Miami Dolphins* defendants, altered its position in reliance by allowing Plaintiffs' yachts to be listed on its website.

As with all entrants to the stadium for a Miami Dolphins football game who would not have been admitted into the stadium absent the agreement to the ticketback terms, Plaintiffs' boats would not have been listed for sale on YATCO's websites absent their brokers' agreement to the Agreement terms. *See Miami Dolphins*, 410 So. 3d at 691 (citing *Kumar Corp. v. Nopal Lines, Ltd.*, 462 So. 2d 1178, 1185 (Fla. 3d DCA 1985) ("It is a fundamental proposition of the law of agency that a principal may subsequently ratify its agent's act, even if originally unauthorized, and such ratification relates back and supplies the original authority.")).

In its ruling denying arbitration, the district court relied upon an unpublished opinion of this Court in *Peters v. The Keyes Co.*, 402 F. App'x 448, 450 (11th Cir. 2010) (unpublished), which was not cited or addressed by any of the parties'

23

memoranda.  *Peters* cited another real estate brokerage case, *Nestler-Poletto Realty, Inc. v. Kassin*, 730 So. 2d 324, 326 (Fla. 4th DCA 1999).  Both of these cases involve the reverse factual predicate of a non-signatory agent trying to enforce an arbitration clause entered by the parties to a real estate contract.  Here, Yatco is a signatory and party to the mandatory arbitration clause, and seeks to enforce the arbitration provision against the principal of a signatory agent.  In *Peters* and *Nestler-Poletto*, on the other hand, the non-signatory agent was the one trying to enforce the arbitration clause entered into by the buyer and seller of real estate.  In that reverse situation, both courts held that the non-party to the contract containing an arbitration clause could not compel arbitration of its claims against one of the parties.  *Id*.

In this case, the party seeking to compel arbitration is a signatory to the arbitration agreement.  The arbitration agreement was mandatory and non-negotiable.  Every broker listing a boat for sale for a client signed the arbitration agreement.  By authorizing their broker to list their boat on YATCO, each person/Plaintiff who sold a vessel through YATCO's websites received the benefit of the listing.

As a result, Plaintiffs are bound to the arbitration clause in the Agreement which was accepted by their agents.  Therefore, the district court's order should be reversed and arbitration compelled.

## POINT II: ESTOPPEL REQUIRES PLAINTIFFS TO ARBITRATE.

### A. Estoppel prevents Plaintiffs from suing based on some of the requirements to use YATCO's website while ignoring others.

"A party may not rely on a contract to establish his claims while avoiding his obligation under the contract to arbitrate such claims." *BDO Seidman, LLP v. Bee*, 970 So. 2d 869, 875 (Fla. 4th DCA 2007) (citation omitted). Nor may Plaintiffs base their claims against YATCO on some of the requirements to use YATCO's websites while avoiding other requirements. "The linchpin of equitable estoppel is fairness." *Bergeron Envtl & Recycling, LLC v. LGL Recyclings, LLC*, 398 So. 3d 988, 995 (Fla. 4th DCA 2024) (applying equitable estoppel in the context of a jury trial waiver).

"Under the doctrine of equitable estoppel, a party may compel arbitration against a non-signatory to a contract if the plaintiff is relying on a contract to assert its claims and the scope of the arbitration clause in that contract covers the dispute." *Osterer v. BAM Trading Servs. Inc.*, 753 F. Supp. 3d 1289, 1295 (S.D. Fla. 2024).

In *Osterer*, plaintiff alleged that defendant's policies allowed an unknown hacker to take his bitcoin and launder it through defendant's cryptocurrency exchange accounts. *Id.* at 1293. It was undisputed that the unknown hacker agreed to the defendant's account terms which included arbitration, but plaintiff had not. *Id.* at 1295. Nevertheless, the court compelled arbitration based on estoppel because

plaintiff's claims "derived" from the underlying account terms, even though his theory of liability described a variety of the defendant's practices. *Id.* at 1297.

The same estoppel analysis from *Osterer* applies here. Plaintiffs' Complaint against YATCO "derives" from the requirements to use its websites, which stems from the Agreement that includes the arbitration provision. Plaintiffs rely on this collection of requirements as the basis for their claims against YATCO and the arbitration clause is broad enough to include the claims.

### B.     YATCO's broad arbitration clause directly encompasses Plaintiffs' claims.

The Agreement's arbitration clause is broad and includes essentially all of YATCO's business. It states: "[s]pecifically, **all claims arising out of or relating to** the Agreement (including its formation, performance and breach), the parties' relationship with each other and/or your **use of the Services** shall be finally settled by binding arbitration administered by the American Arbitration Association under Commercial Arbitration Rules." (ECF No. 185-1, Ex A § 14.3) (emphasis added). "Services" is a defined term which includes the YATCO website: "This Agreement controls Subscriber's access to YATCO's technology platform and services and its associated applications, portals, and website, etc. (the "Service"). (ECF No. 185–1, Ex. A at Intro.).

Access to YATCO's services, including the ability to list yachts on its websites, is the lynchpin of Plaintiffs' allegations against YATCO. (ECF No. 140 ¶

7). The "Agreement controls Subscriber's access to YATCO's technology platform and services and…website." (ECF No. 185–1, Ex. A at Intro.). Thus, Plaintiffs' claims fall squarely within the Agreement. Further, "[w]hether a claim falls within the scope of an arbitration agreement turns on the factual allegations of the complaint rather than the legal causes of action asserted." *Gregory v. Electro-Mech. Corp.,* 83 F.3d 382, 384 (11th Cir. 1996). Plaintiffs cannot avoid the arbitration clause when its claims are directed to matters within the scope of the Agreement.

### C. **Alternatively, Plaintiffs' claims significantly "relate to" the Agreement and are subject to the Agreement's arbitration clause.**

Even if Plaintiffs' claims were not directly within the terms of the Agreement, they must be arbitrated because the allegations "relate to" the Agreement. Under Florida law, an arbitration provision which requires arbitration for claims "arising out of or relating to" to the subject contract "includes those claims that are described as having a 'significant relationship' to the contract – regardless of whether the claim is founded in tort or contract law." *Jackson v. Shakespeare Found.*, 108 So. 3d 587, 593 (Fla. 2023) (explaining that the addition of "relating to" broadens the scope of the matters subject to arbitration). For example, claims under federal civil rights laws for a builder's allegedly racially motivated delays were within the broad arbitration clause of the construction contract. *Phillips v. Lyons Heritage Tampa, LLC,* 341 So. 3d 1171, 1176 (Fla. 2d DCA 2022).

Plaintiffs' claims, despite being based in Federal law, plainly and factually "relate to" the Agreement. Plaintiffs' theorize they were damaged through YATCO's alleged participation in an anti-competitive scheme, which necessarily depends on the popularity of YATCO's website. YATCO is alleged to have participated in the conspiracy through its requirements to list vessels on the YATCO website such as utilizing the Central Listing Agreement, "being an active member of a professional association[,]" and "adher[ing] to a strict code of ethics, rules and regulations." (ECF No. 140 ¶¶ 111–112, 121–123). All the conditions for listing—which include the Agreement and its arbitration clause—are a prerequisite for using YATCO's website. Because Plaintiffs allege harm from some of the alleged requirements of YATCO's listing service, the allegations "derive" from and relate to the Agreement such that they must be arbitrated.

## D. The district court failed to consider the nature of the claims against YATCO.

In rendering its order, the district court may have misunderstood the nature of the claims against YATCO in its analysis of YATCO's estoppel argument. The Order describes the Complaint as alleging "antitrust violations in connection to Defendant's collection of fees." (ECF No. 223 at 7). However, the Complaint does not assert claims based on YATCO's collection of fees. (emphasis added).

Instead, the Complaint alleges harm from YATCO's purported "conspiracy to fix commissions" and "concerted refusal to deal" based on limiting who may list

vessels for sale on its website. (ECF No. 140, Counts I and II). One of those limitations is the requirement to accept the Agreement. Plaintiffs may not pick and choose among YATCO's requirements in basing its claims on the Agreement. Estoppel requires Plaintiffs accept the arbitration provision of the Agreement in litigating their other claims related to the Agreement.

For this reason, Plaintiffs are bound to the Agreement and the district court's contrary conclusion should be reversed.

### POINT III: PLAINTIFFS' CLAIMS AGAINST YATCO SHOULD BE ARBITRATED

The district court did not consider whether an arbitrable issue exists and whether the right to arbitrate has been waived since it concluded Plaintiffs were not bound to the Agreement. *See Sims v. Clarendon Nat'l Ins. Co.*, 336 F. Supp. 2d 1311, 1326 (S.D. Fla. 2004) (listing three part test for a party's right to arbitrate). YATCO addresses these issues, which were briefed below, to the extent this Court may consider them.

### A. The Delegation Clause controls and requires the arbitrators to decide the question of arbitrability.

The Agreement includes a delegation clause, which provides an arbitrator will decide the scope of the arbitration provision instead of a court. As the U.S. Supreme Court made clear, "parties may agree to have an arbitrator decide not only the merits of a particular dispute but also gateway questions of arbitrability, such as whether

the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68–69 (2019) (internal quotations and citations omitted); *see also Airbnb, Inc. v. Doe, et al.*, 336 So. 3d 698, 705–706 (Fla. 2022) (applying Florida law to find agreement delegated arbitrability determinations to arbitrator rather than court).

Here, the Agreement's delegation clause specifies the arbitrator should decide what claims are arbitrable: "The arbitrator … shall have exclusive authority to resolve **all disputes** arising out of or relating to the interpretation, applicability, enforceability or **formation** of the Agreement, **including … whether a claim is subject to arbitration**." (ECF No. 185–1, Ex. A. § 14.3) (emphasis added). Accordingly, because there is an enforceable agreement to arbitrate, whether there is an arbitrable issue should be determined by the arbitrator.

### B. <u>Even if the Court determines the applicability of the arbitration provision, it applies to Plaintiffs' claims.</u>

As discussed in Section II regarding estoppel above, Plaintiffs claims derive from and "relate to" the Agreement. Plaintiffs' claims are based on the requirements for a broker to use YATCO's websites to list boats for sale. The Agreement explicitly "controls Subscriber's access to YATCO's technology platform and…websites." (ECF No. 185–1, Ex. A at Intro.).Further, Plaintiffs cannot base their claim on some of the alleged requirements to list boats for sale on YATCO's website and ignore other parts of the Agreement.

Additionally, there is no limitation on the types of claims which may be arbitrated. For example, the U.S. Supreme Court held physicians could be compelled to arbitrate RICO claims even though the arbitration agreement might be construed to limit the damages awarded. *PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401, 407 (2003); *see also Mitsubishi Motors v. Soler Chrysler-Plymouth*, 473 U.S. 614 (1985) (holding claims arising under the Sherman Act arbitrable).

Accordingly, this Court should find that the claims raised against YATCO in the Complaint are subject to arbitration.

### C.    There was no waiver of the right to arbitrate.

Finally, YATCO did not waive its right to seek arbitration. The district court required YATCO to seek leave before filing an individual motion. YATCO joined in Defendants' Joint Motion to Dismiss because YATCO's Motion for Leave to File a Motion to Compel Arbitration was still pending on the deadline to file a motion to dismiss. (ECF No. 178). As the district court found, "it is reasonable that YATCO joined in the motion to dismiss in an abundance of caution." (Paperless Order, Aug. 28, 2024, ECF No. 183). After filing its Motion to Compel Arbitration, YATCO did not participate further in the Motion to Dismiss and did not join in the Reply filed jointly by the other Defendants. (ECF No. 192 fn. 2).

"To determine whether a waiver has occurred, the Court first considers whether under the totality of the circumstances, the party has acted inconsistently

with the arbitration right." *Gutierrez v. Wells Fargo Bank, N.A.*, 889 F.3d 1230, 1236 (11th Cir. 2018) (citation omitted). Here, YATCO pursued its right to arbitration before doing anything else in the litigation. Once it was given leave to move to compel arbitration, it did nothing further to "invoke the litigation machinery." *Id.* Here, there is no basis to find a waiver.

## V.    <u>CONCLUSION</u>

YATCO has a right to arbitrate Plaintiffs' claims because: (1) a valid, written agreement exists based on agency principles and estoppel; (2) an arbitrable issue exists; and, (3) the right to arbitrate has not been waived.

Based upon the foregoing, YATCO respectfully requests that this Court REVERSE the district court's order denying YATCO's Motion to Compel Arbitration and remand with instructions to grant the motion and compel Plaintiffs to arbitrate their claims against YATCO.

**TAFT STETTINIUS & HOLLISTER LLP**
525 Okeechobee Blvd., Suite 900
West Palm Beach, FL 33401
Phone: (561) 655-2250/Fax: (561) 655-5537
Email: alan.rose@taftlaw.com
     mchandler@taftlaw.com
     WPB_Docket_Assist@taftlaw.com
     rfitzgerald@taftlaw.com
     gweiss@taftlaw.com
     tfoust@taftlaw.com
     gdavies@taftlaw.com
     *Attorneys for Appellant, YATCO LLC*

By:     s/ *Alan B. Rose*
_____

**Alan B. Rose, Esq.**
Fla. Bar No. 961825
**Roy E. Fitzgerald, Esq.**
Fla. Bar No. 856540
**Gregory S. Weiss, Esq.**
Fla. Bar No. 163430
**Tracy Segal Foust, Esq.**
Fla. Bar No. 0520713

## CERTIFICATE OF COMPLIANCE

WE CERTIFY that this brief complies with the type-volume limitation set forth in Fed. R. App. P. 32(a)(7)(B). The brief contains 7,118 words (based upon the word count feature of Word® and excluding the certificate of interested persons and corporate disclosure statement, the tables of contents and citations, the statement regarding oral argument, and the certificates of service and compliance).

## CERTIFICATE OF SERVICE

I hereby certify that on August 4, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically.

**TAFT STETTINIUS & HOLLISTER LLP**
*Attorneys for Appellant, Yatco LLC*

By:  *s/ Alan B. Rose*
Alan B. Rose, Esq.
Fla. Bar No. 961825

175125511v1